Howard **WALKER** for himself and other tenants in low cost housing projects in the City of New York who are similarly situated, Plaintiff,

v.

The **NEW YORK CITY HOUSING AUTHORITY**, Defendant.

No. 72-C-483.

United States District Court,
E. D. New York.

May 1, 1972.

On Motion to Certify May 11, 1972.

Abraham Gerges, Brooklyn, N. Y., for plaintiff.

Otto M. Bonaparte, New York City, Jeanne Hollingsworth, New York City, of counsel, for defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, Chief Judge.

Howard Walker is a tenant of premises 55 Nostrand Avenue, Brooklyn, New York. That building is one of a number of buildings constructed pursuant to the Public Housing Law of the State of New York and known as Marcy Houses. The defendant is an authority organized under the Public Authority Law of the State of New York. The defendant operates 190 low income projects in the City of New York consisting of approximately 157,000 rental units. The projects consist of federal, state and city financed projects. Control of federally financed low income projects is retained in the Department of Housing and Urban Development (HUD).[1]  City financed low cost projects require the approval of the City Council and the Board of Estimate in planning construction and fixing of rents.[2]

The named plaintiff brought this action on behalf of himself and all the tenants of Marcy Houses. He moves to broaden the class to include all the tenants occupying rental units in apartments owned by defendant. Since the right of the defendant to increase rents in state aided low income houses differs from federal or city aided projects, the court finds the class to consist of tenants in state aided houses owned by defendant. [Rule 23(b)(2)].

Defendant has increased the rent of tenants since January 1, 1972 upon the annual income review of the tenant. The increase in those instances is based upon the increase in income of the tenant. By letter dated March 17, 1972 all defendant's tenants were advised of a rent increase equal to $7\frac{1}{2}\%$ of the then current rent effective May 1, 1972. Tenants failing to execute an amendment to the lease were then advised that if they failed to execute the amendment they would be served with a notice terminating their leases and faced eviction. Plaintiff claims that the Economic Stabilization Act of 1970 (P.L. 91–379, 84 Stat. 299) as amended by the Economic Stabilization Amendments of 1971 (P.O. 92–210, 85 Stat. 743) [the Act] froze the rents at the level of December 28, 1971. Plaintiff seeks judgment enjoining defendant from putting the proposed increases into effect and rolling back the rents to the level of December 28, 1971 and further for judgment in the amount of all increases over the rentals of December 28, 1971. Jurisdiction is based on § 210 of the Act.

---

1. Section 204(E) of the "Terms and Conditions," of contract between the "Local Authority and the United States of America" provides

   "(E) The income limits and rents fixed or revised by the Local Authority and approved by the government shall govern the operation of the Projects."
   The Housing and Urban Development Act of 1970, 84 Stat. 1786 (12 U.S.C. § 1701z–

   3). See § 204 of the Consolidated Annual Contributions Contract between local authority and United States of America providing for approval of the government of rent schedules.

2. Gelfand v. N. Y. City Housing Authority, 111 N.Y.S.2d 256 (S.Ct.N.Y.County 1952, Botein, J.).

Plaintiff moved for a preliminary injunction. The court directed a trial of the action on the merits with a hearing on the motion for a preliminary injunction (Rule 65(a)(2) Rules of Civil Procedure).

Section 301.501 freezes rents on all apartments except those "in rent controlled units that are subject to the control of a governmental authority under paragraph (b)(1) and (2) of § 301.106."

Section 301.106(b)(2) in pertinent part provides:

"(b) Rent Controlled Housing defined.

For the purposes of the section the term 'rent controlled housing' means a residence for which the monthly rent is established or controlled . . .

. . . . . .

(2) By (in whole or in part) a state . . . government, or an agency or instrumentality thereof, which has provided financial assistance for the construction . . . of, but which does not own the residence."

Plaintiff's claim is founded on the power of the authority to fix rents as provided in section 154 of the Public Housing Law of the State of New York. It provides:

"Subject to the terms of any loan or subsidy contract with a government, the power to fix rents on a project shall rest exclusively with the authority."

The loan and subsidy contract[3] in state aided low cost housing projects is a tripartite agreement. The State of New York through the Commissioner of the Division of Housing and Community Renewal Commission agrees to finance the construction of the project and make annual subsidy payments equal to the debt service. The City of New York agrees to make annual subsidy payments equal to the real estate taxes. The New York City Housing Authority agrees to construct the project in accordance with plans and specifications approved by the Commissioner. Every action undertaken by the Authority, i. e., the planning stage, the approval of the site, the acquisition of land, the construction of the project, is closely supervised by the Commissioner and requires his approval under the contract terms.

The rigid controls exercised by the Commissioner to the time of completion of the project are not abandoned after completion. Part IV of the contract provides the supervision and control by the Commissioner during the operation of the project by the Authority.

Section 401(b)[4] of the contract states a formula for maximum rents based on operating costs and provides for control by the Commissioner of any excess income. Section 407[5] requires the Authority to submit all proposed rent

---

3. Plaintiff submitted a consolidated and amended loan and subsidy contract for Marcy Houses dated March 22, 1945 and represented that the terms and conditions are forms incorporated into every state aided low income housing project.

4. § 401. *Character of Project:* . . . .
(b) no higher rentals will be charged than the Authority shall find necessary to assure revenues which (together with the annual cash subsidies actually received from the State and City, and any other revenues derived from the operation of the Project) will be sufficient to pay all costs of operation, maintenance, depreciation, taxes, reserves and all principal and interest on the Loan as same shall become due, and otherwise to comply with the covenants contained in this Con-

tract. If the revenues from whatever sources derived, received in connection with the Project should exceed the amount required for the operation of the Project in accordance with the provisions of this Contract, such excess shall be deposited in a special account and expended for or applied to such purposes by the Authority as the Commissioner may approve.

5. § 407. *Schedules and Budgets:* In connection with the operation of the Project the Authority covenants that it will:
(1) submit for the approval of the Commissioner prior to adoption, all proposed rent schedules and proposed standards of eligibility and occupancy;
(2) submit for the approval of the Commissioner prior to adoption, such periodic

schedules and annual budgets to the Commissioner for approval.[6]

■ 9 N.Y.State Code of Rules and Regulations § 1627–5.1 captioned Rent determination is the formalization of rules for fixing both minimum and maximum rates as well as eligibility. It is clear that all rent schedules are subject to the approval of the Commissioner (Division of Housing and Community Renewal). Plaintiff argues that the regulation is in derogation of § 154 of the N.Y. Public Housing Law. The argument is not persuasive. In the light of the generally accepted form of rent control in the loan and subsidy contracts on state aided housing the regulation is merely expository of the power described in the statute. Statements in lower court rulings that the Authority has the exclusive power to fix rents in low income housing, Barnes v. N. Y. City Housing Authority, 16 Misc.2d 670, 184 N.Y.S.2d 314 (S.Ct., N.Y.Co.1959) and Gelfand v. N. Y. City Housing Authority, *supra,* must be interpreted in the framework of the issues of the litigation. They do not support plaintiff's position in the claim at bar.

Defendant sought and obtained the Commissioner's approval for a 7½% increase effective May 1, 1972.[7]

■ Rental units in state aided low rent housing projects owned by the defendant are rent controlled units as defined in § 301.106 of the Economic Stabilization Regulations.

Findings of fact and conclusions of law are contained in this memorandum of decision as required by Rule 52 of the Federal Rules of Civil Procedure.

The complaint is dismissed. The Clerk is directed to enter judgment in favor of the defendant and against the plaintiff dismissing the complaint.

## ON MOTION TO CERTIFY

This is a motion to certify that a substantial constitutional issue exists as required pursuant to section 211(c) of the Economic Stabilization Act of 1970. The court in a memorandum of decision and order dismissed the complaint in this class action on May 1, 1972 and judgment was entered in favor of the defendant and against the plaintiff on May 2, 1972. The court found that the rental units in state aided low rent public housing are "rent controlled housing" as defined under section 301.106 of the Economic Stabilization Regulations and, therefore, are not subject to the rent freeze of the Act.

■ The court does not feel that the constitutional claim is substantial and declines to certify the question. The court notes without deciding that plaintiff's right to appeal to the Temporary Emergency Court of Appeals may include the right to challenge the constitutionality of the section cited.

The court does not reach the other issues raised by the defendant in answer to the plaintiff's application. The motion is in all respects denied. It is

So ordered.

---

budget as he may request during the first year of operation of the Project and thereafter its proposed annual budget.

6. It is also interesting to note that the contract provides effective methods for supervising the operation by the Authority in granting the Commissioner the authority to prescribe bookkeeping methods and unlimited rights to examine books of account.

7. Letter of Ass't Commissioner Fred Hecht dated February 24, 1972.